## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ERIC BRIAN ROSENBERG**                                          **PLAINTIFF**

**VERSUS**                                  **CIVIL ACTION NO.1:14-cv-00122-LG-JMR**

**COAST COLLECTION AGENCY, INC.**                          **DEFENDANT**

### ANSWER TO COMPLAINT, COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

COMES NOW the Defendant, Coast Collection Agency, Inc. ("CCA" or "the Defendant"),

by and through counsel, and files this its Answer and Affirmative Defenses, as follows:

### FIRST DEFENSE

The Complaint fails to state sufficient facts, which, if proved, would entitle the Plaintiff to

relief under any cause of action or claim asserted.

### SECOND DEFENSE

AND NOW without waiving and expressly reserving any and all affirmative defenses herein,

the Defendant hereby responds to like numbered paragraphs in the Complaint as follows:

1.      Defendant admits that Plaintiff alleges the existence of a cause of action for actual and

statutory damages, legal fees, and costs for alleged violations of the Fair Debt Collection

Practices Act, 15 U.S.C. §1692a et seq. and the Fair Credit Reporting Act , 15 U.S.C. §1681

et seq., as well as other claims, but the Defendant denies that Plaintiff has any viable cause

of action whatsoever for relief against the Defendant.

2.      Defendant admits that the plaintiff alleges the existence of a claim for compensatory and

punitive damages under Mississippi law, but the Defendant denies any liability under

Mississippi law, or otherwise and would further affirmatively show that some or all of the

putative Mississippi law claims are preempted in whole or in part by federal law.

3. Defendant admits that jurisdiction and venue are proper in the United States District Court for the Southern District of Mississippi based on the Defendant's timely removal of this action pursuant to 28 U.S.C. §1331 and §1367.

4. Except to admit that several of Plaintiff's legitimate past due and unpaid debts have been placed with the Defendant for collection, the Defendant lacks sufficient knowledge or information to form a belief with respect to the veracity of all other allegations in ¶ 4 of the Complaint, which relate exclusively to matters within the personal knowledge of the Plaintiff or with respect to acts or omissions of third parties other than the Defendant, and which are denied on this basis.

5. Defendant denies the allegations of ¶ 5 of the Complaint except to affirmatively admit and show that all of the Plaintiff's accounts referred to the Defendant for collection were incurred by the Plaintiff between January 23, 2008 and May 19, 2012 at Ocean Springs Hospital, 3109 Bienville Blvd., Ocean Springs, MS 39564 ("the Hospital" or "SRH"), a political subdivision of the State of Mississippi, against which no statute of limitations runs; that prior to being placed for collection with the Defendant, the Hospital attempted to collect the said accounts from Plaintiff using the services of a nonparty, PST Services, Inc., a McKesson Company ("PST") located in the State of Florida, and that no collection action has ever been threatened or filed against the Plaintiff by the Defendant.

6. Defendant denies the allegations of ¶ 6 of the Complaint as stated. Defendant would further affirmatively show that no "letter... asking for validation of the debts" is exhibited with, or sufficiently described in the Complaint to facilitate its identification by the Defendant. Even

if Plaintiff did hypothetically request "verification of the debts" Defendant was under no obligation to respond to untimely verification requests, if any, submitted outside time limits for verification of a debt pursuant to 28 U.S.C. §1692a, et seq, the Fair Debt Collection Practices Act (hereafter: "the FDCPA"). Defendant admits that on one or more occasions, it investigated false claims by the Plaintiff communicated to the Defendant through major credit reporting agencies and that the Defendant repeatedly verified with the Hospital that Plaintiff's debts owed by the Plaintiff were legitimate debts of the Plaintiff which the Plaintiff has, in some cases, subsequently paid in full, and that all information given by the Defendant about Plaintiff to the major credit reporting agencies was accurate.

7. Except to admit that the Plaintiff visited the Defendant's place of business on or about February 3, 2014, Defendant denies the allegations of ¶ 7. The Defendant would further affirmatively show that by February 3, 2014, the time limit for requesting verification of every one of the Plaintiff's accounts referenced in the Complaint had long since expired and that Plaintiff tendered a check to the Defendant on that date in full payment of all of Plaintiff's outstanding and overdue debts, and that Plaintiff subsequently stopped payment on that check with the result that no funds were actually paid by the Plaintiff directly to the Defendant.

8. The Defendant denies the allegations of ¶ 8 of the Complaint, as stated. Defendant would further affirmatively show, on information and belief, that the Plaintiff on February 4, 2014, paid ten (10) of his outstanding debts directly to the Hospital using a credit card, leaving at least two (2) of his largest outstanding debts to the Hospital unpaid.

9. The Defendant admits that the Plaintiff visited the Defendant's place of business on or about

February 4, 2014 but the allegations of ¶ 9 of the Complaint are otherwise denied as stated. The Defendant would further affirmatively show again that by February 4, 2012, the time limit for requesting verification of every one of the Plaintiff's accounts referenced in the Complaint had long since expired and that there was and is no obligation as a matter of law upon the Defendant to "validate" the "relationship between Coast Collection Agency and the original creditor."

10. The Defendant denies the conclusory allegations of ¶ 10 of the Complaint, as stated. The Defendant would affirmatively show that all information reported by the Defendant to the major credit reporting agencies was accurate and updated by the Defendant in the fashion and within the time limits imposed by the Fair Credit Reporting Act; that any negative credit history reflected on Plaintiff's credit report is solely the result of the Plaintiff's failure to timely and properly pay his debts in question owed to the Hospital; that the Plaintiff's eventual payment of his legitimate past due debts does not entitle the Plaintiff to have the otherwise accurate defaults and tardy payment history removed or expunged from his credit report and that the Plaintiff has committed the tort of abuse of process by filing a groundless Complaint herein against the Defendant for improper purposes.

11. The Defendant denies the conclusory allegations of ¶ 11 of the Complaint, as stated. The Defendant would affirmatively show that all information reported by the Defendant to the major credit reporting agencies was accurate and updated by the Defendant in the fashion and within the time limits imposed by the Fair Credit Reporting Act; that any negative credit history reflected on Plaintiff's credit report is solely the result of the Plaintiff's failure to timely and properly pay his debts in question owed to the Hospital; that the Plaintiff's

eventual payment of his legitimate past due debts does not entitle the Plaintiff to have the otherwise accurate defaults and tardy payment history removed or expunged from his credit report and that the Plaintiff has committed the tort of abuse of process by filing a groundless Complaint herein against the Defendant for improper purposes.

12. The allegations set forth in ¶ 12 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied.

13. The allegations set forth in ¶ 13 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied.

14. The allegations set forth in ¶ 14 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied.

15. The allegations set forth in ¶ 15 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied.

16. The allegations set forth in ¶ 16 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied.

17. The allegations set forth in ¶ 17 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied.

18. The allegations set forth in ¶ 18 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Defendant further affirmatively denies that the Plaintiff has suffered any damages whatsoever.

19. The Defendant incorporates by reference all objections and affirmative defenses set forth above in response to the allegations of ¶ 19 as though set forth in full herein.

20. The allegations set forth in ¶ 20 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Additionally, all claims allegedly stated in ¶ 20 of the Complaint are preempted by the FCRA. Finally, the allegations of ¶ 20 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8.

21. The allegations set forth in ¶ 21 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Additionally, all claims allegedly stated in ¶ 21 of the Complaint are preempted by the FCRA. Additionally, the allegations of ¶ 21 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

22. The allegations set forth in ¶ 22 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Additionally, all claims allegedly stated in ¶ 22 of the Complaint are preempted by the FCRA. Additionally, the allegations of ¶ 22 do not satisfy the requirements

of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

23.    The conclusory allegations set forth in ¶ 23 of the Complaint require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Additionally, all claims allegedly stated in ¶ 23 of the Complaint are preempted by the FCRA. Finally, the allegations of ¶ 23 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8 and because no "written communications" are exhibited with the Complaint and no "oral communications" are described with sufficient factual particular date to enable the Defendant to form a belief with respect to the truthfulness of any such allegation.

24.    The Defendant incorporates by reference all affirmative defenses set forth above in response to the allegations of ¶ 24 as though set forth in full herein.

25.    The allegations set forth in ¶ 25 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Additionally, all claims allegedly stated in ¶ 25 of the Complaint are preempted by the FCRA. The allegations of ¶ 25 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

26.    The allegations set forth in ¶ 26 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are

hereby denied. Additionally, all claims allegedly stated in ¶ 26 of the Complaint are preempted by the FCRA. The allegations of ¶ 26 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

27. The allegations of ¶ 27 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Additionally, all claims allegedly stated in ¶ 27 of the Complaint are preempted or limited by the FDCPA and/or FCRA. Defendant denies that the Plaintiff has suffered any damages whatsoever.

28. The Defendant incorporates by reference all objections and affirmative defenses set forth above in response to the allegations of ¶ 28 as though set forth in full herein.

29. The allegations set forth in ¶ 29 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. All claims allegedly stated in ¶ 29 of the Complaint are preempted by the FCRA. The allegations of ¶ 29 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

30. The allegations set forth in ¶ 30 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. All claims allegedly stated in ¶ 30 of the Complaint are preempted by the

FCRA. The allegations of ¶ 30 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

31. The allegations set forth in ¶ 31 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. All claims allegedly stated in ¶ 31 of the Complaint are preempted by the FCRA. The allegations of ¶ 31 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

32. The allegations set forth in ¶ 32 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same, including all subparts thereof, are hereby denied. All claims allegedly stated in ¶ 32 of the Complaint are preempted by the FCRA. The allegations of ¶ 32 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

33. The allegations set forth in ¶ 33 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. All claims allegedly stated in ¶ 33 of the Complaint are preempted by the FCRA. The allegations of ¶ 33 do not satisfy the requirements of factual pleading under F.

R. Civ. P. 8. Finally, the Plaintiff is estopped to deny his liability for debts which were his legitimate obligation and which he has paid in full notwithstanding his false representations that the debts were not his debts.

34.     The allegations of ¶ 34 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. Additionally, all claims allegedly stated in ¶ 34 of the Complaint are preempted or limited by the FDCPA and/or FCRA. Defendant denies that the Plaintiff has suffered any damages whatsoever.

35.     The Defendant incorporates by reference all objections and affirmative defenses set forth above in response to the allegations of ¶ 35 as though set forth in full herein.

36.     The allegations set forth in ¶ 36 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. The allegations of ¶ 36 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8.

37.     The allegations set forth in ¶ 37 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. The allegations of ¶ 37 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Additionally, the Plaintiff is estopped from making such allegations by the fact that he has paid all of the accounts referred to the Defendant for collection notwithstanding his false representations to the Defendant and third parties that the accounts were not the Plaintiff's accounts.

38.     The allegations set forth in ¶ 38 of the Complaint are conclusions of law that require no

answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. The allegations of ¶ 38 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Additionally, the Plaintiff is estopped from making such allegations by the fact that he has paid all of the accounts referred to the Defendant for collection notwithstanding his false representations to the Defendant and third parties that the accounts were not the Plaintiff's accounts.

39.    The allegations set forth in ¶ 39 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. The allegations of ¶ 39 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Additionally, the Plaintiff is estopped from making such allegations by the fact that he has paid all of the accounts referred to the Defendant for collection notwithstanding his false representations to the Defendant and third parties that the accounts were not the Plaintiff's accounts.

40.    The allegations set forth in ¶ 40 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are hereby denied. The allegations of ¶ 40 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Additionally, the Plaintiff is estopped from making such allegations by the fact that he has paid all of the accounts referred to the Defendant for collection notwithstanding his false representations to the Defendant and third parties that the accounts were not the Plaintiff's accounts.

41.    The allegations set forth in ¶ 41 of the Complaint are conclusions of law that require no answer by the Defendant, but in the event that the Defendant is mistaken, the same are

hereby denied. The allegations of ¶ 41 do not satisfy the requirements of factual pleading under F. R. Civ. P. 8. Additionally, the Plaintiff is estopped from making such allegations by the fact that he has paid all of the accounts referred to the Defendant for collection notwithstanding his false representations to the Defendant and third parties that the accounts were not the Plaintiff's accounts.

42. The Defendant denies the allegations of ¶ 42 the Complaint and denies that the plaintiff is entitled to any damages whatsoever. Additionally, the plaintiff's claim for punitive damages is groundless because punitive damages are not permitted under the FDCPA.

43. All other allegations of the Complaint not expressly admitted are denied by the Defendant.

WHEREFORE PREMISES CONSIDERED, the Defendant denies that the Plaintiff is entitled to damages in subparagraphs A-J in the final portion of the Complaint following ¶ 42 thereof, or any other kind or character of damages or relief whatsoever, and the Defendant would further move the Court to dismiss the Complaint, with prejudice, and to assess the Defendant's reasonable costs and attorneys fees to the Plaintiff. Finally, defendant prays for general relief.

## ADDITIONAL AFFIRMATIVE DEFENSES

44. The allegations of Plaintiff's Complaint are demonstrably false and the Plaintiff has failed to verify the allegations of his Complaint.

45. The Plaintiff's claims are barred by the applicable statutes of limitation under federal and state law, including but not limited to the FDCPA's one-year statute of limitations, the FCRA's two-year statute of limitations, the one-year statute of limitations applicable to certain claims under Mississippi law, assuming that they are not preempted by federal law, and Mississippi's general three-year statute of limitations.

46.     The Plaintiff ratified each and every one of the debts in question and agreed to make installment payments of such debts in many instances.

47.     Plaintiff's claims under Mississippi law are preempted in whole or in part by the FDCPA or FCRA, or both of them.

48.     The Complaint does not properly demonstrate that any of the debts referenced therein are "debts" subject to the FDCPA or FCRA.

49.     The Complaint does not demonstrate that the Plaintiff is a "consumer" for purposes of the FDCPA or FCRA.

50.     The Defendant did not violate any provision of the FDCPA.

51.     The Defendant did not violate any provision of the FCRA.

52.     Each of the accounts referred to the Defendant for collection were debts legitimately owed by the Plaintiff to SRH or its affiliates for which the Plaintiff admitted liability and never disputed in whole or in part within the time or in the manner required by the FCRA or FDCPA.

53.     Plaintiff repeatedly acknowledged liability for the debts referenced in his Complaint and made partial payments on such debts.

54.     The Plaintiff fraudulently induced the Defendant to issue a receipt for payment by means of Plaintiff's personal check which the Plaintiff subsequently and without legitimate cause or justification stopped payment on. Plaintiff thereafter used the Defendant's receipt in an effort to further deceive and defraud others into believing that he had paid debts assigned to the Defendant for collection which, in fact, he had not paid.

55.     Plaintiff is not an attorney at law and is not represented by an attorney at law admitted to practice in Mississippi.

56. By virtue of the applicability of Miss. Code Ann. § 15-1-51 and Miss. Const. Art. 4, § 104, no statute of limitations applies to the Accounts.

57. The Plaintiff is not entitled to have his adverse credit history resulting from his nonpayment of his legitimate debts expunged pursuant to the provisions of the FCRA or FDCPA, or otherwise.

58. Equitable relief is not available under the FDCPA.

59. Plaintiff has not alleged or demonstrated grounds for any declaratory or injunctive relief.

60. The Defendant complied with all applicable requirements of the FCRA.

61. The Defendant complied with all applicable requirements of the FDCPA.

62. Plaintiff's action against the Defendant under this section was brought in bad faith and for the purpose of harassment and should be sanctioned pursuant to 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(c), The Mississippi Litigation Accountability Act, F. R. Civ. P. 11, 15 U.S.C. §1928, and the Inherent Power of the Court.

63. The Defendant complied with all applicable requirements of Mississippi law.

64. The Plaintiff's attempts to dispute the accuracy of his credit history directly to the Defendant were ineffective as a matter of law.

65. The Plaintiff waived the right to timely request validation of any debt referenced in the Complaint and the Plaintiff was entitled thereafter to rely upon the validity of such debt.

66. The Plaintiff is estopped from denying liability for the debts in question because he expressly acknowledged his liability for such debts to the Defendant, and partially paid his undisputed debts.

67.    The Defendant pleads accord and satisfaction, compromise and waiver.

68.    Defendant pleads assumption of the risk.

69.    The alleged injuries and damages claimed by the Plaintiff, if any, were caused or contributed to by the negligence of the Plaintiff.

70.    The alleged injuries and damages claimed by the Plaintiff, if any, were caused or contributed to by the third parties other than the Defendant over which the Defendant exercised no control and for whose acts or omissions the Defendant bears no responsibility whatsoever.

71.    Plaintiff failed to mitigate his damages, if any.

72.    The communications between the Plaintiff and Defendant were qualifiedly privileged under Mississippi law.

73.    The Defendant denies any violation of the FDCPA but in the event that the Defendant is hypothetically mistaken, the Defendant invokes the FDCPA bona fide error defense.

74.    Plaintiff's Mississippi punitive damage claim, if any, is preempted by the FDCPA, but in the event that the Plaintiff otherwise asserts any punitive damage claim under Mississippi law, the defendant invokes all statutory and case law defenses to punitive damage claims under Mississippi law and applicable federal law.

75.    Plaintiff's creditor in all instances referenced in the Complaint is Singing River Hospital, a community hospital owned by one or more political subdivisions of the State of Mississippi. Consequently, Plaintiff's debts are public debts ultimately owed to the State of Mississippi which are not subject to any statute of limitation.

The Defendant reserves the right to assert additional affirmative defenses.

## COUNTERCLAIM

AND NOW, having answered the allegations of the Complaint, the Defendant, pursuant to 28 U.S.C. §1331, 1367 and F. R. Civ. P. 5(b) and 13(a) hereby serves notice of the following compulsive Counterclaims asserted against the Plaintiff which arise out of the transactions or occurrences which are the subject matter of plaintiff's claims against the Defendant:

### Jurisdiction and Venue

1.     Defendant incorporates by reference, each and every allegation, answer and denial contained in the above paragraphs.

2.     Defendant's Compulsory Counterclaims seek declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and 2202, plus damages pursuant to the laws of the State of Mississippi.

3.     This Court has supplemental jurisdiction over any state law claims asserted in the counterclaim pursuant to 28 U.S.C. §1367.

4.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c).

### The Parties

5.     Counter -Plaintiff CCA is a Mississippi corporation domiciled and having its principal place of business in Pascagoula, Mississippi, which is within the judicial boundaries of the United States District Court for the Southern District of Mississippi.

6.     Counter-Defendant Mr. Rosenberg is an adult resident citizen domiciled in Jackson County, Mississippi, which is within the judicial boundaries of the United States District Court for the Southern District of Mississippi. Since he is a *pro se* party Plaintiff in this action, will be personally served with process by mailing a copy of this counterclaim the United States mail, postage prepaid

addressed, to the following address supplied on his Complaint: 4002 Lacroux Court, Ocean Springs, MS 39564.

<u>General Allegations</u>

7.  The Defendant-Counter-Plaintiff incorporates herein by reference herein to each and every allegation contained in each of the above paragraphs.

8.  On information and belief, the Plaintiff-Counter-Defendant, Mr. Rosenberg, is an adult resident citizen of Jackson County, Mississippi, suffering from no physical or mental disabilities, who possesses at least average intelligence and has sufficient education to make him capable of reading, writing and managing his personal affairs, including, but not limited to his monitoring and paying his personal debts and monitoring the true status of his personal credit history.

9.  Between January 23, 2008 and May 19, 2012, Mr. Rosenberg received medical treatment on twelve (12) different occasions at the emergency room facilities of Ocean Springs Hospital, 3109 Bienville Blvd., Ocean Springs, MS 39564 ("the Hospital" or "SRH"). The 12 resulting accounts are:

|    | Service Date | SRHS No. | CCA NO. | Amount | Paid To | Date | Bal |
|----|----|----|----|----|----|----|----|
| a. | 1/23/08 | 48349963 | 9128901 | $63.60 | SRH | 2/4/14 | 0 |
| b. | 11/26/08 | 50317346 | 9128902 | $13.80 | SRH | 2/4/14 | 0 |
| c. | 1/24/10 | 52961101 | 9128903 | $70 | SRH | 2/4/14 | 0 |
| d. | 4/1/10 | 53508295 | 9128904 | $14 | SRH | 2/4/14 | 0 |
| e. | 5/9/10 | 53739247 | 9128905 | $26.20 | SRH | 2/4/14 | 0 |
| f. | 6/16/10 | 53925658 | 9128906 | $26.20 | SRH | 2/4/14 | 0 |
| g. | 12/25/10 | 55365344 | 9128907 | $39 | SRH | 2/4/14 | 0 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| h. | 12/30/10 | 55456382 | 9128089 | $14 | SRH | 2/4/14 | 0 |
| i. | 4/22/11 | 56319284 | 9128910 | $291 | PST? | ?? | $291? |
| j. | 3/3/12 | 58639059 | 9128911 | $70 | SRH | 2/4/14 | 0 |
| k. | 4/26/12 | 59044271 | 9128912 | $15.40 | SRH | 2/4/14 | 0 |
| l. | 5/19/12 | 59260482 | 9128913 | $70 | PST? | ?? | $70? |
| | Totals | | | $713.20 | | | $361 |

10. On the 12 occasions when Mr. Rosenberg obtained treatment at the Hospital, he promised in writing to pay for such services rendered, to the extent that payments were not made thereafter on his behalf by a responsible third party.

11. Subsequent to receiving treatment at the Hospital, Mr. Rosenberg was initially billed by PST Services, Inc., a McKesson Company ("PST") located in the State of Florida, for the unpaid balance of all 12 accounts listed in ¶ 9 above. PST is the Hospital's duly authorized billing service provider.

12. Notwithstanding his promises to pay for services received at the Hospital, Mr. Rosenberg failed to timely pay either PST or the Hospital any of the 12 resulting balances of the Accounts which were not paid in full by third parties.

13. All 12 of the Accounts were subsequently referred to the Defendant-Counter Plaintiff, CCA, for collection. In each instance, the Hospital represented to CCA that each account was a valid unpaid past due debt owed in full by Mr. Rosenberg.

14. On behalf of the Hospital and PST, CCA made multiple demands upon Mr. Rosenberg for payment of all 12 of the Accounts.

15. Despite being promptly advised by CCA of his right to dispute liability for all or any part of each of the 12 Accounts, Mr. Rosenberg did not timely or properly dispute liability for, or request

verification of any of the 12 Accounts within 30 days after notification of his verification rights from CCA. Moreover, because of the one-year statute of limitations under the FDCPA, any claim for a failure to validate a debt by CCA would obviously have been long barred by the time that the complaint was filed in this case on February 10, 2014.

16.    On or about February 3, 2014, Mr. Rosenberg and an individual believed to be  Richard I. Wilens, III, 3230 Cumberland Rd Apt 126, Ocean Springs, MS 39564-3217 ("Mr. Wilens") came to CCA's place of business and presented CCA's representative with a personal check #108 ("Check Number 108") drawn on an account styled "Melissa P. Rosenberg" and made payable to Coast Collection Agency in the amount of $752.20, representing full payment for all of the Accounts.  A true and correct copy of Check Number 108 is attached hereto as Exhibit A. On that occasion, Mr. Rosenberg demanded that his accurate and unfavorable credit history be deleted based on his delivery of Check Number 108.  CCA's Representatives informed Mr. Rosenberg that credit history would not be deleted, but CCA would update it to show that the past due accounts in question had been paid in full. CCA was not required to modify Mr. Rosenberg's credit history based upon Check Number 108, because he stopped payment on that check before funds were received by CCA.

17.    On February 3, 2014, in exchange for Check Number 108, CCA, in good faith, gave Mr. Rosenberg CCA's Receipt No. 112252 ("the Receipt") reflecting payment to CCA in the amount of $752.20, which was the outstanding balance on account number 91289. Thereafter, Mr. Rosenberg and Mr. Wilens left CCA's place of business.  A true and correct copy of the Receipt is attached hereto as Exhibit B.  The original Receipt is believed to be still in the possession of Mr. Rosenberg.

18.    The next day, February 4, 2014, Mr. Rosenberg and the individual believed to be Mr. Wilens return to CCA's place of business. Mr. Rosenberg advised CCA's representatives that he had paid

his original creditor in full directly, and that he intended to put a stop payment order on Check Number 108. Mr. Rosenberg did not offer any confirmation of his alleged payment to his original creditor, and on information and belief, Mr. Rosenberg's statements to this effect or false. Mr. Rosenberg did not return the Receipt, Exhibit B, which was given by CCA the previous day at that time or at any time since. He was told by CCA, that if he stopped payment on Check Number 108, CCA would have to back out his February 3 payment and wait for the original creditor to confirm payment in full before his accounts could be again reported as paid in full. At that point, the individual believed to be Mr. Wilens stated that Mr. Rosenberg was trying to buy a house and that the accounts in question needed to be deleted. Mr. Wilens further announced in the presence of CCA's representatives that he was an attorney at law and personally handed CCA's representative a document entitled "Notice of Intent to File a Lawsuit" ("the Notice Letter"). A true and correct copy of the Notice Letter is attached hereto as Exhibit C. The Notice Letter, Exhibit C, is signed by Mr. Rosenberg, and copied to "R Ira Wilens, *esq*," (emphasis added). The suffix "esq." means "Esquire," which is a deliberately false representation by Mr. Rosenberg that Mr. Wilens is or was an attorney at law. This false representation by Mr. Rosenberg was a deliberate fraudulent attempt to coerce CCA to misrepresent and modify Mr. Rosenberg's accurate credit and payment history reported by CCA to the major credit reporting agencies.

19.     No one by the name of "Richard I. Wilens" is listed as being a member of the Mississippi bar on the publicly available online directory of licensed Mississippi attorneys maintained by the Mississippi Bar Association.

20.     On information and belief, the individual identified as "Richard I. Wilens" is not and never has been an attorney licensed to practice in Mississippi, or in any other jurisdiction.

21. Mr. Rosenberg deliberately acted in concert with the individual identified to CCA as "Richard I. Wilens" in an effort to fraudulently coerce CCA into misrepresenting Mr. Rosenberg's accurate credit history by falsely representing verbally and in writing that the individual identified as "Richard I. Wilens" was a lawyer, when in fact he was not, and is not a lawyer.

22. As reflected by Merchants & Marine Bank's printed notations on Exhibit A hereto, Mr. Rosenberg stopped payment on Check #108 on February 4, 2014. Check #108 was returned unpaid to CCA on or about February 11, 2014. As a result, account number 91289 remained unpaid on CCA's records.

23. On information and belief, on February 4, 2014, Mr. Rosenberg went to the Hospital and paid the Hospital $352.20 using Mr. Rosenberg's personal credit card. The amount which Mr. Rosenberg paid directly to the Hospital was for only 10 of his 12 past due accounts. Consequently, despite his $352.20 partial payment to the Hospital, Mr. Rosenberg still owed the Hospital an even greater past due unpaid amount, namely $361.70. The two accounts which Mr. Rosenberg did not pay directly to the Hospital are still outstanding according to information supplied to CCA through the date of this Answer and Counterclaim.

24. On February 4, 2014, the very same day that he stopped payment on Check #108 and paid less than half of the total amount of the Accounts directly to the Hospital, Mr. Rosenberg submitted a written complaint about CCA to the Better Business Bureau of Mississippi, Inc. ("BBBM") in Brandon, Mississippi. A true and correct copy of Mr. Rosenberg's complaint and BBBM's February 4, 2014 cover letter to CCA are attached hereto as Exhibit D, and incorporated by reference. A examination of Exhibit D discloses several false statements or material omissions, including, but not limited to the following:

a. Although Mr. Rosenberg states that he had access to his credit report on February 4, 2014, because he states in this exhibit that "I showed them [the hospital] a copy of my credit report on my iPhone....," a copy of his credit report is not attached to this exhibit.

b. Although Mr. Rosenberg specifically references the correct $291 amount owed for account number 56319284 in the fourth line of his narrative, he conspicuously neglects to mention that he did not pay this debt to CCA, the Hospital or anyone else on or before February 4, 2013, or at any other time prior to the filing of his Complaint initiating the present litigation;

c. Mr. Rosenberg also conspicuously fails to mention that he did not pay account number 59260482 in the amount of $70 to CCA, the hospital or anyone else on or before February 4, 2013 or at any other timeprior to the filing of his Complaint initiating the present litigation;

d. With respect to Mr. Rosenberg's complaints about requesting verification of these debts from CCA, he neglects to mention that the latest of the 12 accounts in question, account number 59260482, was referred to CCA for collection on September 20, 2012, approximately 14 months earlier. A debt collector such as CCA is only obligated to verify an account is disputed within the first 30 days after the debt collector's initial notification to the debtor of the debtor's so-called "validation rights" under the FDCPA. Mr. Rosenberg conspicuously fails to mention that he received a timely notice of his validation rights from CCA for each of the 12 accounts and that in no instance did he request verification within 30 days thereafter;

therefore, he falsely accuses CCA of failing to validate his debts when, in fact, he himself failed to timely or properly request validation of any of the Accounts, and even if this were not true, all FDCPA claims based on this theory were already time-barred by the time that his complaint to BBBM was submitted;

e.  Mr. Rosenberg's statement that the hospital "figured out that it was some old bills to emergency room doctors that insurance did not pick up," it is a false statement because according to information supplied by the Hospital to CCA, no insurance company was responsible for the nonpayment of the Account; rather, every one of the Accounts were submitted to various insurance carriers who paid a portion of each bill, leaving an unpaid co-pay or deductible balance, which remaining amount was personally owed by Mr. Rosenberg;

f.  Mr. Rosenberg's representations at the end of the "statement of the problem" falsely imply that the partial credit card payment which he made directly to the Hospital on February 4, 2014 fully satisfied his outstanding indebtedness to the Hospital, which is not true, and in fact, the payments made by Mr. Rosenberg to the hospital on February 4, 2014 were less than half of the total amount he owed;

g.  The date which Mr. Rosenberg gave for when the "problem occurred" (8/1/2008) is false and misleading because he was not billed for any treatment received after Hospital on August 1, 2008 and as demonstrated above, his actual dates of service received at the Hospital ranged from January 3, 2008 to May 19, 2012.

h.  Finally, this exhibit conspicuously neglects to mention that on each occasion when Mr. Rosenberg disputed these 12 accounts to a credit reporting agency on or before

February 4, 2014, he falsely and inconsistently told the credit reporting agencies that the accounts "were not his...accounts," when, in fact, each and every one of the Accounts were his lawful unpaid debts;

j.     The "desired settlement" requested by Mr. Rosenberg requested ("I would like a letter stating that Coast Collections will remove these 13 accounts from all of the credit reporting agencies and agree not to reenter them.") amounts to a deliberate fraudulent attempt to coerce CCA to expunge and modify Mr. Rosenberg's accurate credit and payment history reported by CCA to the major credit reporting agencies. As of February 4, 2014, knew or should have known that CCA had not yet been notified of Mr. Rosenberg's partial payment of 10 of the 12 accounts directly to the Hospital that same day, and as explained above, Mr. Rosenberg did not pay the other 2 accounts, representing the majority of the amount owed to the Hospital on or before the date that he filed his complaint with the BBBM or by the date that he filed the Complaint initiating the present litigation.

25.     On information and belief, Mr. Rosenberg that same day, February 4, 2014, filed 13 different dispute notices with Equifax, one of the major credit reporting agencies, complaining that account number 91289, which is CCA's global account number for all 12 of these accounts, was still shown by CCA as outstanding and unpaid. True and correct copies of the timely ACDV's submitted by CCA in response to Equifax's notification of Mr. Rosenberg's dispute are attached hereto as Exhibits E, F, G, H, I, J, K, L, L, M, N, and P, respectively. These ACDV's accurately reproduce the information which Mr. Rosenberg reported to Equifax, and CCA's response thereto. Examination of Exhibits E-P, demonstrates that Mr. Rosenberg, made the following false or misleading statements

statements to Equifax in connection with each one of these accounts:

a.  That each account was "not... his" (See information in block labeled dispute code 1 on each form), even though by the time that he submitted these disputes, Mr. Rosenberg knew or should have known that every one of the Accounts were his responsibility;

b.  "I have attempted to get this collection agency to validate this debt, but they did not respond..." (See "FCRA Relevant Information"). This statement is misleading because Mr. Rosenberg never timely requested validation of any of these Accounts in the fashion required by the FDCPA, a fact he conspicuously fails to mention.

c.  "As a last ditch effort to remove it from my file I paid all 13 accounts be listed in full." This is a false statement because Mr. Rosenberg as never paid 13 accounts. Instead, he only paid 10 of 12 accounts directly to the Hospital on the very same day that he submitted these disputes. By that time, he had stopped payment on Check Number 108 presented to CCA. Nevertheless, he fraudulently uploaded a copy of CCA's receipt which he obtained on February 3, 2014 before he stopped payment on the check as false and misleading "evidence" of payment of the Accounts.

The submission of each of these dispute notifications by Mr. Rosenberg to Equifax was a separate deliberately timed harassing and fraudulent attempt on his part to coerce CCA to misrepresent and modify Mr. Rosenberg's accurate credit and payment history reported by CCA to the major credit reporting agencies. Examination of the payment history portion of each of these Exhibits demonstrates that by the time that CCA responded to each of these exhibits, the payments which Mr. Rosenberg made to the Hospital on 10 of the 12 accounts on the same day that he submitted each of his disputes were properly credited and posted and the related accounts were reported as "closed."

(See notation of "date of last payment" and "date closed" (02-21-14 in both instances) in the middle of Exhibits E., F., G., H., I., J., K., L., M, N and O. The 2 accounts on which Mr. Rosenberg had not yet made payments on as of February 26, 2014, are correctly shown as still outstanding in the same locations of Exhibits M and P.

26.     On February 10, 2014, the same day that he filed his pro se lawsuit, Mr. Rosenberg and the individual believed to be Mr. Wilens returned to CCA's place of business where they served CCA's President with the Summons and Complaint initiating the present litigation.

## COUNT ONE- ABUSE OF PROCESS

27.     CCA incorporates by reference all allegations set forth in ¶¶'s 1-26 above in support of this Count One of its Counterclaim.

28.     Under Mississippi law, the elements of abuse of process are: (1) an illegal and improper perverted use of the process, which was neither warranted nor authorized by the process; (2) ulterior motive or purpose of a person in exercising such illegal, perverted, or improper use of process; and (3) resulting damage or injury. Favorable termination of the prior proceedings is not an element of this cause of action. In proving abuse of process, it is not necessary to show the tortfeasor's motive for securing issuance of the process. It is required only that the process, once obtained, is willfully misapplied.

29.     The unverified Complaint filed by Mr. Rosenberg on February 10, 2014 is an illegal and improper perverted use of that process, which was neither warranted nor authorized by the process because Mr. Rosenberg knew or should have known at all relevant times that each and every one of the Complaint's material allegations are false and that the Accounts referred to CCA for collection were his lawful unpaid past due debts owed to the Hospital at all relevant times. By the time that the

Complaint was filed, Mr. Rosenberg had expressly acknowledged and admitted liability for 10 of the 12 accounts which he paid directly to the Hospital on February 4, 2014, six (6) days before the Complaint was filed in state court. Mr. Rosenberg did not to pay the other 2 accounts on February 4, 2014, but on information and belief, he has, subsequent to the filing of his Complaint, paid these last two accounts directly to PST in Florida.

29.     The ulterior motive or purpose of Mr. Rosenberg in exercising the aforesaid illegal, perverted, or improper use of process, is the same motive or purpose expressed in his false and malicious BBBM complaint, namely an improper attempt to coerce CCA to expunge accurate unfavorable credit history generated as the result of Mr. Rosenberg's failure to timely pay his legitimate debts, and not as the result of any act or omission on the part of CCA.

30.     CCA has been damaged by the malicious and unlawful actions of Mr. Rosenberg because it has been forced to engage the services of defense counsel to investigate and defend against his false and frivolous claims. The damages which CCA has suffered to date will continue to accrue unless and until Mr. Rosenberg voluntarily dismisses or suffers the dismissal of his Complaint.

WHEREFORE PREMISES CONSIDERED, CCA demands judgment against Mr. Rosenberg in the amount of:

1.     Actual damages in the amount of all expenses incurred to respond to Mr. Rosenberg's false and frivolous dispute notifications and complaints, which is currently estimated to be approximately $5000 and which is increasing daily;

2.     Punitive damages in the amount of $25,000 to deter future misconduct of this kind by Mr. Rosenberg.

3.     Such other relief as may be appropriate under the circumstances.

30. CCA incorporates by reference all allegations set forth in ¶¶'s 1-29 above in support of this Count Two of its Counterclaim.

31. A credit information provider such as CCA is not obligated to expunge or delete accurate credit information reported to a credit reporting agency simply because a defaulting debtor like Mr. Rosenberg eventually pays his past due legitimate debts.

32. All of the trade lines for the Accounts in question which were confirmed to have been paid by Mr. Rosenberg through the Hospital prior to the filing of his Complaint were timely updated to reflect payment in full by CCA.

33. If and when CCA receives confirmation from PST that Mr. Rosenberg has paid the remaining 2 accounts in full, it will voluntarily update the trade lines relating to those accounts to reflect the information reported to it by PST.

32. Mr. Rosenberg's Accounts are not and never were time-barred.

33. The Hospital is a community-owned hospital system comprised of two hospital systems: Singing River Hospital in Pascagoula, Mississippi, and Ocean Springs Hospital in Ocean Springs, Mississippi. Singing River is also a political subdivision of the State of Mississippi as defined by Miss. Code Ann. § 41-13-10 (2013). By virtue of the applicability of Miss. Code Ann. § 15-1-51 and Miss. Const. Art. 4, § 104, no statute of limitations applies to the Accounts. See, Miss. Code Ann. § 15-1-51 and Miss. Const. Art. 4, § 104. Miss. Code Ann. § 15-1-51 and Miss. Const. Art. 4, § 104 provide that the statute of limitations in civil cases does not run against the state, its political subdivisions, or municipal corporations thereof. Here, the underlying debt was owed to the Hospital, a "community hospital" existing under Miss. Code Ann. § 41-13-10 et seq. As such, the Hospital is

a subdivision of the State of Mississippi within the meaning of Miss. Const. Art. 4, § 104 and Miss. Code Ann. § 15-1-51, and the statute of limitations would be inoperative against it. *Enroth v. Memorial Hospital at Gulfport*, 566 So. 2d 202, 206 (Miss. 1990). Under Miss. Code Ann. §§ 19-3-41(2) and 21-17-1, even if a collection agency or attorney is retained to collect a debt, the debt is never time-barred and still "owed" to the sponsoring political subdivision. *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999).

WHEREFORE PREMISES CONSIDERED, CCA requests a declaratory judgment from the Court confirming and declaring:

1. That the Accounts referred to CCA for collection were legitimate accounts owed by Mr. Rosenberg to the Hospital;

2. That Mr. Rosenberg ratified and acknowledged his liability for all 12 Accounts to the Hospital on or before February 4, 2014;

3. That Mr. Rosenberg paid 10 of the 12 Accounts in full directly to the Hospital on the very same day that he made false representations to Equifax that the accounts were "not... his;"

4. That Mr. Rosenberg had not paid 2 of the Accounts as of the date that he filed his complaint commencing the present litigation;

5. That Mr. Rosenberg made false and material misstatements to Equifax on our about February 4, 2014 as described elsewhere in this counterclaim;

6. That Mr. Rosenberg made false and defamatory statements about CCA to BBBM on February 4, 2014 as described elsewhere in this counterclaim;

7. That simply because Mr. Rosenberg eventually paid or intends to pay the Accounts long after they are past due and in default does not require CCA to delete or expunge otherwise accurate

payment history for such accounts.

8. That according to well-settled law in *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999), none of the Accounts are or were ever subject to any statute of limitations by virtue of the applicability of Miss. Code Ann. § 15-1-51 and Miss. Const. Art. 4, § 104;

9. That CCA's modifications to Mr. Rosenberg's credit history through the date of the service of the ACDV's exhibited herewith is accurate, true and correct;

10. Such other declaratory relief as may be appropriate under the circumstances.

## COUNT III-FRAUD

34. CCA incorporates by reference all allegations set forth in ¶ ¶'s 1-33 above in support of this Count Two of its Counterclaim.

34. The elements of fraud under Mississippi law: (a) a representation; (b) its falsity; (c) its materiality; (d) the speaker's knowledge of its falsity or ignorance of its truth; (e) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (f) the hearer's ignorance of its falsity; (g) the hearer's reliance on the representation's truth; (h) the hearer's right to rely thereon; and (i) the hearer's consequent and proximate injury.

35. On multiple occasions described above, Mr. Rosenberg deliberately and falsely represented verbally and in writing to CCA that Richard Wilens was an attorney at law.

36. Each representation by Mr. Rosenberg to CCA that Richard Wilens was an attorney at law was false.

37. Each representation by Mr. Rosenberg to CCA that Richard Wilens was an attorney at law was material because such representations are unlawful and because Mr. Rosenberg intended for his false representations to motivate CCA's representatives to take action which they were not lawfully

required to take.

38. None of the persons at CCA who initially heard or received Mr. Rosenberg's representations that Richard Willens was an attorney at law was initially aware that Mr. Wilens is not, and was not an attorney at law licensed to practice in Mississippi.

39. In reliance upon Mr. Rosenberg's false representation that Mr. Wilens was an attorney at law CCA undertook an unnecessary investigation which ultimately revealed that Mr. Wilens was not an attorney at law.

40. Because federal law imposes separate duties upon CCA if a debtor is legitimately represented by counsel, CCA had a right to initially rely upon Mr. Rosenberg's misrepresentation as a basis for commencing the unnecessary investigation which Mr. Rosenberg's representations about Mr. Wilens status as a attorney precipitated.

41. CCA consequently suffered proximate injury in the form of lost staff time and additional unnecessary expense and conducting the investigation revealing that Mr. Willens was not, in fact, an attorney.

42. Additionally, Mr. Rosenberg repeatedly made multiple representations to one or more of the major credit reporting agencies regarding the Accounts in question in this litigation. In some cases, including, but not limited to the notices of dispute which he gave to the major credit reporting agencies, as reflected in Exhibits E, F, G, H, I, J, K, L, M, N, O and P hereto, Mr. Rosenberg claimed that the Accounts were not his accounts, even though he knew otherwise. Additionally, even after he had stopped payment on Check Number, Mr. Rosenberg falsely represented to the major credit reporting agencies and subsequently, the CCA, in Exhibits E, F, G, H, I, J, K, L, M, N, O and P that he had paid the Accounts, based on the Receipt we see fraudulently procured from CCA, based on

based on Exhibit B.

43.     The representations which Mr. Rosenberg made to one or more of the major credit reporting agencies to the effect that the Accounts were not his accounts were false.

44.     The false representations made by Mr. Rosenberg to the major credit reporting agencies regarding the accounts were material because each one of them triggered a separate investigation when communicated to CCA.

45.     Mr. Rosenberg intended that his false representations be acted upon by CCA in the form of multiple groundless reinvestigations of his disputes in the hope that CCA would eventually tire of reinvestigating the same groundless claims and delete the otherwise accurate related information and Mr. Rosenberg's credit history.

46.     The major credit reporting agencies to whom Mr. Rosenberg made his false representations were ignorant of their falsity, as was CCA at least until after the first time that CCA investigated and confirmed that each Account was Mr. Rosenberg's account.

47.     The hearer or recipient of each such representation was obligated to rely upon each representation made by Mr. Rosenberg in his notices of dispute for the purposes of communicating the dispute to CCA and triggering a reinvestigation requirement whenever he repeated each false representation.

48.     CCA suffered consequent and proximate injury in the form of unnecessary staff effort and lost productive work time answering Mr. Rosenberg's repetitious false dispute claims.

49.     CCA was the victim of other fraudulent materially false statements of fact made by Mr. Rosenberg to various third parties including but not limited to the Hospital and PST, which Mr. Rosenberg made for the purposes of either avoiding liability for the Accounts or subjecting CCA to

unnecessary burden and expense.

WHEREFORE PREMISES CONSIDERED, CCA demands judgment of and from Mr. Rosenberg, as follows:

1.      For all damages suffered by CCA in the form of unnecessary costs and expenses incurred to respond to Mr. Rosenberg's repeated false representations made to CCA directly, or to the major national credit reporting agencies under circumstances where he knew or should have known that CCA would be called upon to respond to his false allegations, to the effect that the Accounts in question were not in fact his Accounts, or that the Accounts had been paid in whole or in part, when in fact they were not, and based on similar false misrepresentations to the Hospital and PST regarding payments allegedly made to CCA which were not, in fact, made by Mr. Rosenberg to CCA.

2.      Such other relief as the court may deem appropriate under the circumstances.

## COUNT IV-DEFAMATION

50.     CCA incorporates by reference all allegations set forth in ¶¶'s 1-49 above in support of this Count Two of its Counterclaim.

51.     A claim of defamation under Mississippi law requires that the following elements be established: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and, (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

52.     The statements which Mr. Rosenberg made about CCA in his BBBM complaint, Exhibit D hereto, are false and defamatory.

53.     The false and defamatory statements made by Mr. Rosenberg about CCA to BBBM were an unprivileged publication to a third party.

54.     Mr. Rosenberg's false statements about CCA made to BBBM were deliberate misstatements designed to coerce a modification of his credit history without legitimate justification or the product of gross negligence.

55.     The false statements which Mr. Rosenberg made about CCA to BBM were written and intended to injure or harm CCA's good business reputation, and thereby expose CCA to public hatred, contempt or ridicule, or degrade it in the business community, or lower it in the confidence of the business community. Additionally, the "desired settlement" which Mr. Rosenberg requested from BBBM ("I would like a letter stating that Coast Collections will remove these 13 accounts from all of the credit reporting agencies and agree not to reenter them.") was a deliberate fraudulent attempt to coerce CCA to expunge and modify Mr. Rosenberg's accurate credit and payment history reported by CCA to the major credit reporting agencies.

WHEREFORE PREMISES CONSIDERED, CCA demands judgment of and from Mr. Rosenberg, as follows:

1.     For all damages suffered by CCA in the form of unnecessary costs and expenses incurred to respond to Mr. Rosenberg's false representations made to BBBM about CCA and for actual and punitive damages for unjustified damage to CCA's reputation in the business community which it serves.

2.     A Order directing Mr. Rosenberg to make a written retraction of his false and misleading complaint to BBBM about CCA, and admitting that he made materially false statements about CCA and his own credit history in an effort to fraudulently and improperly coerce CCA to issue a letter

stating that CCA "will remove these 13 accounts from all of the credit reporting agencies and agree not to reenter them."

3.  Such other relief as the court may deem appropriate under the circumstances.

## RESERVATION OF RIGHTS TO PURSUE SANCTIONS

Finally, in the event that CCA prevails in whole or in part in this matter, it hereby expressly reserves the right to pursue sanctions against Mr. Rosenberg under the FDCPA, the FCRA, 28 U.S.C. §1927, F. R. Civ. P. 11, the Mississippi Litigation Accountability Act and this Court's inherent powers to sanction bad-faith litigation.

Respectfully submitted, this the 12th day of March, 2014.

BY:      COAST COLLECTION AGENCY, INC.
         PAGE, MANNINO, PERESICH
         & McDERMOTT, P.L.L.C.

By: _____

Title: _____

/s/ William V. Westbrook, III
WILLIAM V. WESTBROOK, III
(MSB No. 7119)
Page, Mannino, Peresich & McDermott,
P.L.L.C.
2408 14th Street
Gulfport, MS 39501-2019
Telephone: 228-868-8999
Facsimile: 228-868-8940
cwestbrook@PMP.org

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **Answer to Complaint, Counterclaims and Affirmative Defenses** was forwarded, via United States mail, postage prepaid, to the following:

Eric Brian Rosenberg - Plaintiff *pro se*
4002 Lacroux Court
Ocean Springs, MS 39564

So certified this the 12th day of March, 2014.

/s/ William V. Westbrook, III
WILLIAM V. WESTBROOK, III

STATE OF _MISSISSIPPI_

COUNTY OF _JACKSON_

PERSONALLY APPEARED BEFORE ME, the undersigned authority, a notary public in and for the aforesaid jurisdiction, the within named _Dennis M. Dunn_, who acknowledged that he/she is the _President_ of Coast Collection Agency, and that the things and matters contained in the above and foregoing Answer to Complaint, Counterclaims and Affirmative Defenses are true and correct to the best of his/her knowledge, information and belief and that he/she signed, executed, and delivered the above and foregoing instrument on the day and year therein set forth and mentioned.

GIVEN UNDER MY HAND, and official seal of office, this _18th_ day of _March_, 2014.

_Jamie L. Rhodes_
NOTARY PUBLIC

My Commission Expires (SEAL)

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 29833
JAMIE L. RHODES
Commission Expires
May 8, 2015
JACKSON COUNTY